## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **ADONNIS MCGHEE,** ) | |
| **#220262,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:19-cv-1090-RAH-CWB |
| ) | (WO) |
| **JEFFERSON S. DUNN, et al.,** ) | |
| ) | |
| Defendants. ) | |

### RECOMMENDATION OF THE MAGISTRATE JUDGE

**I. Introduction**

Adonnis McGhee, a state inmate, filed this action on December 30, 2019 to seek redress under 42 U.S.C. § 1983 for conduct allegedly occurring at Staton Correctional Facility. (Doc. 1).[1] An Amendment to Complaint subsequently was filed on August 10, 2020. (Doc. 65). In short, McGhee alleges that Officer Alfred Murphy used excessive force against him during the early morning hours of December 6, 2019 while Officer Kingston Bennette and Officer Jackie Lester refused to intercede. (Doc. 1 at pp. 2-3). McGhee also names as defendants Captain Otis Smith (whom he alleges was "responsible for all inmates and officers under his command"), Warden Joseph Headley (whom he alleges was "responsible for the security and welfare of inmates and officers [at Staton]"), and Commissioner Jefferson Dunn (whom he alleges was "responsible for the operation of this department"). (*Id.* at pp. 1-2). All of the defendants have been named in both their individual and official capacities. (Doc. 1; Doc. 65). McGhee has requested a jury trial and seeks declaratory relief, injunctions, and monetary damages. (Doc. 1 at pp. 1 & 5).

---

[1] All documents and page numbers cited herein are those assigned electronically via the CM/ECF filing system.

The defendants in turn filed special reports that included relevant evidentiary materials (*e.g.*, affidavits, prison documents, and medical records) addressing McGhee's allegations. (Doc. 34 at Exhs. 1-13; Doc. 53 at Exhs. 1-4; Doc. 59 at Exh. 1-7; and Doc. 71 at Exh. 1).  After reviewing the special reports, the court issued an order dated October 6, 2020 that required McGhee to file a response to the defendants' submissions and to support the response with affidavits or other statements made under penalty of perjury.  (Doc. 73).  McGhee thereafter filed his response on December 16, 2020.  (Doc. 77).

The October 6, 2020 Order also notified the parties that "the court may at any time [after expiration of the time for McGhee to file a response] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 73 at p. 3).  Pursuant to that disclosure, the undersigned will now treat the defendants' special reports as having presented arguments for summary judgment and will recommend that summary judgment be granted in part and denied in part.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … .  [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and alerting the court to portions of the record that support the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *See Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.    Facts**

The essential factual allegations in the Complaint are as follows:

On or around December 6, 2019, defendants failed to protect plaintiff from an assault by correctional officers within Staton Correctional Facility 2906 Marion Spillway Rd Elmore, AL 36025.

On or around said date plaintiff walk [sic] into dorm "B" to received [sic] information in regards to his personal property from inmate D. Austin. Defendant Murphy ask [sic] the plaintiff where was he heading due to the fact that he was no

3

longer assigned to dorm "B", he informed Officer Murphy that he was going to retrieve his personal property.

When plaintiff located inmate D. Austin, Austin informed plaintiff that his personal property had been place [sic] into the property room. Plaintiff then proceeded to exited [sic] the dormitory, that is when plaintiff recognized officer Murphy and officer Lester behind him and inmate D. Austin.

Plaintiff McGhee notified officer Murphy he was going to the shift office concerning his property. Officer Murphy then began spraying mace in the back of plaintiff's head.

Plaintiff then threw his hands in the air and dropped to his knees. Officer Murphy then took out his baton and said, "THIS IS FOR ACTING LIKE YOU ARE SO TOUGH", and struck plaintiff in his back, left leg, and left arm. While officer Lester and John Doe's 1-4 stood there and watched, along with inmated [sic] D. Austin.

Then one of the officer John Doe's placed plaintiff in handcuffs, and escorted plaintiff outside where another officer John Doe hit plaintiff in the left side of his head with a blunt instrument.

Plaintiff was escorted to the institution barber shop where Sgt. Bennett told him to wash the spray out of his eyes. Sgt Bennett then began to question plaintiff about the incident that occurred [sic].

Plaintiff then informed Sgt. Bennett that the did not feel safe talking with any Department of Correction Officials and plaintiff requested to see mental health because plaintiff was having suicidal thoughts.

However, plaintiff request which was denied and plaintiff was escorted to prison infirmary to get a body chart by john doe#1 and john doe#2.

Plaintiff informed the nurse on duty that he did not feel safe at staton correctional facility, plaintiff also inform [sic] nurse that his arm was hurting. And he requested medical attention. Plaintiff was denied medical treatment and placed in a single cell.

Plaintiff was then placed into a single cell where he refused to eat or drink anything that Departrnentment [sic] of Correction officials brought him. After 48 hrs plaintiff was allowed to see mental health, where he notified them he feared for his life and was having suicidal thoughts.

4

> Plaintiff was placed into a crisis cell on Non Acute crisis. Plaintiff then told the mental health staff that he can not even rely on mental health in this institution, because he knew he was supposed to be on ACUTE watch which requires 24 hrs supervision. Plaintiff was then placed into crisis cell where he remained until he was transfered [sic] to Hamilton A&I on or Around December 9th or 10th 2019.

(Doc. 1 at pp. 2-4).

Officer Murphy has confirmed that he indeed had an encounter with McGhee on December 6, 2019 but described the incident as follows:

> On December 6, 2019, inmate McGhee entered B-Dormitory. I ordered inmate McGhee to stop because he was not assigned to B-Dormitory. Inmate McGhee refused to stop. CO Murphy followed inmate McGee into the rear of the dorm and called for assistance.
>
> Inmate McGhee approached an unidentified inmate and began arguing with the inmate concerning some store items. I ordered inmate McGhee to get out of the dorm. Inmate McGhee refused. I tapped inmate McGhee on his shoulder. Inmate McGhee immediately turned and swung at me with a closed fist. I backed up and sprayed a burst of chemical agent into the facial area of inmate McGhee while ordering inmate McGhee to get onto the floor. After being sprayed inmate McGee complied with the order.
>
> At no time did CO Murphy strike inmate McGhee in his back, left leg, or left arm.

(Doc. 34-4 at pp. 1-2). Officer Murphy further testified that "Sgt. Kingston Bennette along with several other officers responded to the call for assistance to assist with inmate McGhee." (Doc. 53-4 at pp. 1-2). Sergeant Bennette has testified that that he "did not observe Correctional Officer Alfred Murphy strike inmate McGhee nor assault or cause bodily harm to inmate McGhee" and that "Inmate McGhee was escorted out of the dormitory without further injury." (Doc. 71-1 at pp. 1-2). Captain Smith and Officer Lester similarly denied observing any type of assault on McGhee. (Doc. 34-5 at p. 1; Doc. 34-6 at p. 1).

A "Chemical Gas Exposure" form created following the December 6, 2019 incident reflects that McGhee's initial statement was that "[an] Officer was spraying someone and it accidentally

5

hit me."  (Doc. 39-4 at p. 17).  An Inmate Body Chart created on December 6, 2019 at 1:02 p.m. reflects a similar statement by McGhee that "I got accidentally sprayed by an officer in the dorm." (Doc. 34-9 at p. 18).  The Inmate Body Chart also notes "left arm swollen from previous injury on 12-5-19."  (Doc. 34-9 at p. 18) (emphasis added).

With regard to McGhee's potential injury on December 5, 2019, the record reflects that McGhee was observed fighting with fellow inmate Trayvone Williams.  (Doc. 34-7 at p. 1).  Both inmates were then taken to the shift office where they were photographed and questioned.  (*Id.*). The resulting report specifically stated that: "Inmate Williams claimed Inmate McGhee ran up and struck him"; and "Inmate McGhee appeared to be intoxicated refusing to identify himself and acting extremely hyper."  (Doc. 34-7 at p. 1; Doc. 34-8 at p. 1).  McGhee and Williams were both reprimanded for the incident (Doc. 34-11 at p. 1), and an Inmate Body Chart created on December 5, 2019 at 12:50 a.m. noted small abrasions to McGhee's right outer and inner thumb.[2] (Doc. 34-9 at p. 16).  A second Inmate Body Chart was created at 8:12 p.m. and depicted McGhee's lower left arm "swollen, tender to touch and small knot."  (Doc. 34-9 at p. 15).  The second chart also specifically noted that McGhee refused treatment.  (*Id.*).  Medical records confirm injury to McGhee's left arm, which ultimately was diagnosed by x-rays and treated through casting. (Doc. 34-9 at pp. 2-12; Doc. 34-10 at pp. 17, 18 & 27-29).

In his response to the defendants' special reports, McGhee admits that he and inmate Williams fought around midnight on December 5, 2019.  (Doc. 77 at p. 1).  However, McGhee denies that he refused treatment on December 5, denies that he stated Officer Murphy "accidently

---

[2] A report from December 5, 2019 entitled "Fracture, Dislocation, Sprains" additionally noted "right arm swollen with small knot noted 5-6 inches above wrist" and that McGhee refused to say how the injury occurred.  (Doc. 34-9 at p. 14).

6

sprayed him on the back of his head on Dec. 6," and denies that he "refused to see the medical provider or have his vital signs completed on Dec. 6." (Doc. 77 at p. 2). Finally, McGhee asserts that "there's nothing in the record showing plaintiff swung on Murphy with a closed fist." (*Id.*).

## IV. Discussion

### A. Eleventh Amendment immunity bars McGhee's damages claims against all of the defendants in their official capacities.

To the extent McGhee is requesting monetary damages from the defendants in their official capacities, all defendants are entitled to absolute immunity. Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). With specific respect to the type of claims now being asserted by McGhee, it has been recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, all of the defendants are entitled to sovereign immunity as to claims seeking monetary damages against them in their official capacities. *See, e.g., Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

7

### B. McGhee's claims for injunctive and declaratory relief have become moot.

McGhee has asserted claims for injunctive and declaratory relief based on alleged actions occurring at Staton Correctional Facility. (Doc. 1 at pp. 2-4). However, the record reflects that McGhee subsequently was transferred to Hamilton A&I Correctional Facility (Doc. 28), then to Limestone Correctional Facility (*Id.*), and then released (Doc. 78). Because he is no longer incarcerated at the facility where the underlying conduct allegedly occurred, McGhee's claims for injunctive and declaratory relief are due to be dismissed as moot. *See Smith v. Allen,* 502 F. 3d 1255, 1267 (11th Cir. 2007) ("[A] transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."), *abrogated on other grounds by Sossamon v. Texas,* 563 U.S. 277 (2011); *See also Zatler v. Wainwright,* 802 F. 2d 397, 399 (11th Cir. 1986) (per curium).

### C. McGhee has failed to demonstrate a genuine dispute of material fact as to his claims for deliberate indifference against Officers Lester and Bennette.

Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" toward an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and yet disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

8

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," and ordinary lack of care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). The law is settled that both objective and subjective elements are necessary. *Caldwell*, 748 F.3d at 1099.

With respect to the objective element, an inmate must first show "an objectively substantial risk of serious harm … exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference … ." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. …" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident].").

Finally, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).

Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the prison officials had knowledge of the risk, and despite such knowledge the prison officials consciously disregard the risk. *Farmer*, 511 U.S. at 837 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

McGhee alleges that Officers Lester and Bennette violated their obligations under the Eighth Amended by failing to protect him from the excessive force applied by Officer Murphy on December 6, 2019.  (Doc. 1; Doc. 65).   Officer Lester in turn has denied witnessing Officer Murphy spray chemical agent on McGee and/or strike McGhee.  (Doc. 34-6 at p. 1). Officer Bennette similarly has denied observing Officer Murphy strike, assault, or cause bodily harm to McGhee. (Doc. 71-1 at pp. 1-2).

Based on a careful review of the record, the undersigned concludes that McGhee has failed to present sufficient evidence that either Officer Lester or Officer Bennette was aware that he was at risk for suffering serious harm from Officer Murphy.  Even to the extent evidence might suggest that Officers Lester and Bennette were present and witnessed the incident, the core allegation is that Officer Murphy struck McGhee three times with his baton suddenly and in close succession. (Doc. 1 at p. 3; Doc. 77-1).  There are no allegations of advance warning or extended altercation such that the alleged assault reasonably could have been anticipated, prevented, or stopped.  Under

10

the circumstances presented, the undersigned therefore concludes that summary judgment is due to be granted against McGhee on his claims for deliberate indifference against Officer Lester and Officer Benette.  *See Johnston,* 135 F. App'x at 377.

>    **D.      McGhee has presented a genuine dispute of material fact on his claim for excessive force against Officer Murphy in his individual capacity.**

Claims of excessive force are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  Just as with claims for deliberate indifference, claims asserting an Eighth Amendment excessive force violation include both subjective and objective components.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Id*.; *see also Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'") (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  The subjective component requires that "officials act[ed] with a sufficiently culpable state of mind."  *Id*.  (internal quotations omitted).  To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Sims*, 230 F.3d at 21.

>    The Eleventh Circuit has summarized the excessive force standard as follows:

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible

11

officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002). The Eleventh Circuit has further stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security."). Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order." *Pearson*, 665 F. App'x at 864 ("Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted); *Bennett*, 898 F.2d at 1533 ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

Here, Officer Murphy contends that he ordered McGhee to stop upon his entry into Dorm B and that he further ordered McGhee to leave Dorm B. (Doc. 34-4 at pp. 1-2). Officer Murphy additionally contends that McGhee failed to follow those instructions and that McGhee swung on him with a closed fist. (Doc. 34-4 a p. 2). Officer Murphy acknowledges that he then "sprayed a burst of chemical agent into the facial area of inmate McGhee" but states that "[a]t no time did [he] strike inmate McGhee in his back, left leg, or left arm." (*Id.*). On the other hand, McGhee describes the December 6, 2019 incident as an unprovoked attack:

> Plaintiff McGhee notified officer Murphy he was going to the shift office concerning his property. Officer Murphy then began spraying mace in the back of plaintiff's head. Plaintiff then threw his hands in the air and dropped to his knees. Officer Murphy then took out his baton and said, "THIS IS FOR ACTING LIKE YOU ARE SO TOUGH", and struck plaintiff in his back, left leg, and left arm. While officer Lester and John Doe's 1-4 stood there and watched, along with inmated [sic] D. Austin.

(Doc. 1 at pp. 2-3; *see also* Doc. 77-2 at p. 2). McGhee further asserts that "there's nothing in the record showing plaintiff swung on Murphy with a closed fist." (Doc. 77 at p. 3).

For purposes of evaluating summary judgment, the factual averments must be construed in a light most favorable to McGhee. *See Sears v. Roberts,* 922 F. 3d 1199, 1206 (11th Cir. 2019). That standard now mandates a finding that material facts surrounding the December 6, 2019 incident are in dispute. For example, a genuine dispute exists as to whether the underlying incident was a justified response to McGhee's failure to follow orders or whether Officer Murphy was applying force "maliciously and sadistically to cause harm." A genuine dispute likewise exists as to whether McGhee suffered a broken left arm in the incident or whether the injury occurred during an altercation with another inmate. Accordingly, the undersigned concludes that summary judgment is due to be denied on McGhee's claim of excessive force against Officer Murphy.

### E.  McGhee's supervisory capacity claims are not viable.

McGhee appears to allege that Captain Smith, Warden Headley, and Commissioner Dunn should be held liable on a theory of respondeat superior for the alleged actions or omissions of their subordinates. However, the law is well established that supervisory officials cannot be held vicariously liable in § 1983 actions. *See, e.g., Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). As explained by the United States Supreme Court:

13

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability] … . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability"); *Marsh,* 268 F.3d at 1035 (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim"); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability).

Liability could attach to Captain Smith, Warden Headley, and Commission Dunn only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Yet the record is clear that neither Captain Smith, Warden Headley, nor Commissioner Dunn personally participated or had direct involvement in the underlying events at Staton Correctional Facility.

To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or . . . facts [that] support an inference that [the correctional defendants] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After extensive review of the pleadings and evidentiary materials, the undersigned concludes that McGhee has failed to present any such evidence in that regard. Accordingly, summary judgment is due to be granted in favor of Captain Smith, Commissioner Dunn, and Warden Headley.

**V.    Conclusion**

For all of these reasons, it is the RECOMMENDATION of the Magistrate Judge that:

1. summary judgment be GRANTED in favor of all of the defendants as to McGhee's claims for monetary damages against them in their official capacities;

2. summary judgment be GRANTED in favor of all of the defendants as to McGhee's claims for injunctive and declaratory relief;

3. summary judgment be GRANTED in favor of Jackie Lester and Kingston Bennette on McGhee's claim for deliberate indifference;

4. summary judgment be DENIED as to Alfred Murphy in his individual capacity on McGhee's claim for excessive force;

5. summary judgment be GRANTED in favor of Otis Smith, Jefferson Dunn, and Joseph Headley;

6. Otis Smith, Jackie Lester, Kingston Bennette, Jefferson Dunn, and Joseph Headley be DISMISSED with prejudice as defendants to this action; and

7. this action be set for jury trial on the excessive force claim against Alfred Murphy.

It is hereby **ORDERED** that written objections to this Recommendation must be filed by January 27, 2023.  An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection.  Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 13th day of January 2023.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**